UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TANISIA BOWMAN, | ) | |
| GRACIE MOSS, PAULINE | ) | Case No.: 22cv2785 |
| BENTON, LOURDES MATIAS | ) | |
| and TONI MILLER, on behalf of | ) | |
| themselves and all others | ) | Judge |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Magistrate Judge |
| v. | ) | |
| | ) | |
| CHICAGO HOUSING AUTHORITY, | ) | |
| an Illinois municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1. In 1969 the United States Congress enacted legislation to ensure that low-income public housing residents pay no more than a certain percentage of their income toward rent, which includes reasonable utility expenses. 42 U.S.C. § 1437(a)(1)(A); 24 C.F.R. § 5.603, § 965.501 and § 960.253(c)(3). This federal law and implementing regulations prohibit the Chicago Housing Authority ("CHA") from requiring public housing residents to pay more than 30% of their income towards rent and utilities. *Id*. Further, the implementing regulations require CHA to "revise its allowances for resident-purchased utilities between annual reviews if there is a rate change (including fuel adjustments) . . . [which,] by itself or together with prior rate changes not adjusted for, results in a change of 10 percent or more from the rates on which such allowances were based." 24 C.F.R. § 965.507.

2. Despite these federal mandates and despite natural gas and electricity rates increasing significantly since 2021, CHA has not revised residents' utility allowances when natural gas and electricity rates have increased by 10 percent or more. CHA has thus repeatedly overcharged its low-income public housing residents for rent and utilities, forcing them to make even more difficult choices about how to spread their limited financial resources.

3. Without intervention by this Court, CHA public housing residents will continue to pay more than 30% of their income towards housing and utility costs and may be in jeopardy of losing their housing all because the CHA has repeatedly and egregiously failed to meet its statutory and contractual obligations to subsidize the reasonable utility costs of its low-income families.

4. Plaintiffs include a proposed class of current and former CHA public housing residents who are faced with an imminent threat of irreparable harm as a result of the CHA's ongoing unlawful actions. Plaintiffs seek declaratory and injunctive relief, damages, and payment of past utility and rental costs, including prejudgment interest, attorneys' fees, and costs.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (color of state law), and 1367 (supplemental jurisdiction).

6. Plaintiffs seek declaratory and injunctive relief against the CHA, pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because CHA violated federal law in this judicial district.

## PARTIES

8. Plaintiff Tanisia Bowman is a 46-year-old disabled resident of CHA public housing.

9. Plaintiff Gracie Moss is a 68-year-old resident of CHA public housing.

10. Plaintiff Pauline Benton is a 71-year-old resident of CHA public housing.

11. Plaintiff Lourdes Matias is a 66-year-old resident of CHA public housing.

12. Toni Miller is a 40-year-old resident of CHA public housing.

13. Defendant Chicago Housing Authority is an Illinois municipal corporation, created and existing under the Illinois Housing Authorities Act, 310 Ill. Comp. Stat. 10/1 *et seq*. CHA is a public housing agency within the meaning of 42 U.S.C. § 1437.

## FACTUAL ALLEGATIONS

### Plaintiffs

14. Plaintiff Tanisia Bowman has been a resident of CHA for the past 19 years. Ms. Bowman resides in a three-bedroom scattered-site public housing unit located at 4857 North Kenmore Street, Apartment 958.

15. At all relevant times, CHA has calculated her monthly rent using the same formula: monthly rent = (adjusted monthly household income x .3) – utility allowance.

16. At all relevant times, Ms. Bowman has been required to pay for her gas and electricity in addition to her monthly rent. Ms. Bowman's utility allowance from CHA is currently $138 for a three-bedroom unit and has remained that amount since at least February of 2021. Her household's adjusted monthly income was approximately $810 at the time of her most recent rent determination.

17. Ms. Bowman's monthly rent to CHA is currently $105, after deducting her monthly utility allowance.

18. This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of her household's adjusted monthly income, the maximum amount that CHA can charge for rent and utilities.

19. However, because CHA has failed to revise its utility allowances to account for significant increases in natural gas and electricity rates, Ms. Bowman has been paying and continues to pay CHA and her utility provider more than 30% of her household's adjusted monthly income for rent and the reasonable cost of utilities by an energy-conservative household of modest circumstances.

20. Plaintiff Gracie Moss has been a resident of a CHA public housing unit located at 4857 North Kenmore Street, Apartment 957, since 2003. Her household's adjusted monthly income was approximately $1,226 at the time of her most recent rent determination.

21. At all relevant times, Ms. Moss has been required to pay for her gas and electricity in addition to her monthly rent. Since at least February of 2021, Ms. Moss's utility allowance has been $135 for a three-bedroom unit.

22. At all relevant times, CHA has calculated her monthly rent using the same formula: monthly rent = (adjusted monthly household income x .3) – utility allowance.

23. Ms. Moss's monthly rent to the CHA is $233, after applying an adjustment for her utility allowance. This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of her household's adjusted monthly income, the maximum amount that CHA can charge for rent, including utilities.

24. However, because CHA has failed to revise its utility allowances to account for significant increases in natural gas and electricity rates, Ms. Moss has been paying and continues to pay CHA and her utility provider more than 30% of her household's adjusted monthly income for rent and the reasonable cost of utilities by an energy-conservative household of modest circumstances.

25. Plaintiff Pauline Benton has lived in a CHA public housing unit located at 4454 North Magnolia Avenue, Apartment B, for approximately 20 years. Her household's adjusted monthly income was approximately $2,146 at the time of her most recent rent determination.

26. At all relevant times, Ms. Benton has been required to pay for her electricity and gas expenses in addition to her monthly rent. Since at least February of 2021, Ms. Benton's utility allowance has been $135 for a three-bedroom unit.

27. At all relevant times, CHA has calculated her monthly rent using the same formula: monthly rent = (adjusted monthly household income x .3) – utility allowance.

28. Ms. Benton's monthly rent is $509, after applying an adjustment for her utility allowance. This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of her household's adjusted monthly income, the maximum amount that CHA can charge for rent and utilities.

29. However, because CHA has failed to revise its utility allowances to account for significant increases in natural gas and electricity rates, Ms. Benton has been paying and continues to pay CHA and her utility provider more than 30% of her household's adjusted monthly income for rent and the reasonable cost of utilities by an energy-conservative household of modest circumstances.

30. Plaintiff Lourdes Matias has lived in a CHA public housing unit located at 1853 North Francisco Avenue, for approximately ten years. Her household's adjusted monthly income was approximately $2,546 at the time of her most recent rent determination.

31. At all relevant times, Ms. Matias has been required to pay for her electricity and gas expenses in addition to her monthly rent. Since at least February of 2021, Ms. Benton's utility allowance has been $138 for a 3-bedroom unit.

32. At all relevant times, CHA has calculated her monthly rent using the same formula: monthly rent = (adjusted monthly household income x .3) – utility allowance.

33. Ms. Matias's monthly rent is $626, after applying an adjustment for her utility allowance. This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of her household's adjusted monthly income, the maximum amount that CHA can charge for rent and utilities.

34. However, because CHA has failed to revise its utility allowances to account for significant increases in natural gas and electricity rates, Ms. Matias has been paying and continues to pay CHA and her utility provider more than 30% of her household's adjusted monthly income for rent and the reasonable cost of utilities by an energy-conservative household of modest circumstances.

35. Plaintiff Toni Miller has lived in a CHA public housing unit located at 4657 North Malden Street, Apartment 301, for approximately four years. Her household's adjusted monthly income was approximately $1,613 at the time of her most recent rent determination.

36. At all relevant times, Ms. Miller has been required to pay for her electricity and gas expenses in addition to her monthly rent. Since at least February of 2021, Ms. Benton's utility allowance has been $135 for a three-bedroom unit.

37. At all relevant times, CHA has calculated her monthly rent using the same formula: monthly rent = (adjusted monthly household income x .3) – utility allowance.

38. Ms. Miller's monthly rent is $349, after applying an adjustment for her utility allowance. This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of her household's adjusted monthly income, the maximum amount that CHA can charge for rent and utilities.

39. However, because CHA has failed to revise its utility allowances to account for significant increases in natural gas and electricity rates, Ms. Benton has been paying and continues to pay CHA and her utility provider more than 30% of her household's adjusted monthly income for rent and the reasonable cost of utilities by an energy-conservative household of modest circumstances.

40. At all times relevant to Complaint, Plaintiffs materially performed their obligations under their leases with CHA.

### CHA's Policies and Practices Regarding Utility Allowances

41. CHA operates over 21,000 units of public housing in the City of Chicago, Illinois that are subsidized by HUD and subject to federal statutes and regulations, including 42 U.S.C. §1437 and its implementing regulations.

42. CHA last revised its utility allowances for electricity and natural gas in approximately February 2021.

43. Since February 2021, natural gas and electricity rates have increased for all class members. As of July 2021, the combined cost for residential natural gas and electricity had increased by approximately 20%. As of August 2021, the cost had increased by approximately 40%.

44. Since February 2021, CHA has never increased its utility allowances for public housing residents between its annual utility allowance reviews, despite natural gas and electricity rates increasing by more than 10% between February 2021 and July 2021.

45. CHA's failure to increase utility allowances each month that utility rates increased by 10 percent or more threatens Plaintiffs and putative class members with imminent and irreparable injury, including being forced to go without other necessities in order to pay utilities, or worse, potential eviction or resulting homelessness for failure to maintain utilities.

46. Plaintiffs have no adequate remedy at law.

47. The actions and inactions of Defendant have been willful, wanton, intentional, and in the reckless disregard of Plaintiffs' and putative class members' legal rights.

## LEGAL FRAMEWORK

48. The United States Housing Act prohibits a public housing agency from charging its residents more than 30% of their household's adjusted income for rent, which includes the costs of utilities. 42 U.S.C. § 1437a(a)(1); 24 C.F.R. § 960.253.

49. Public housing authorities are required to pay for these reasonable utility expenses by providing a "utility allowance" to tenants who directly pay their own utilities. 24 C.F.R. § 965.501 *et. seq.* The CHA must provide this allowance to all of its public housing residents, generally in the form of a credit against the amount of the rent a tenant pays the CHA each month. The utility allowance is calculated "to approximate a reasonable consumption of utilities by an energy-conservative household of modest circumstances … ." 24 C.F.R. § 965.505(a); *see also* 24 C.F.R. § 5.603.

50. At least biennially (or triennially for senior or disabled households), CHA uses the household's adjusted income to calculate the tenant's rent. 24 C.F.R. § 960.253(c)(3).

51. To calculate a household's adjusted income each year, CHA obtains the verified annual income of resident household members and then, per HUD regulations, makes deductions for dependents, senior or disabled heads of households, and certain unreimbursed medical, child and disability assistance expenses. 24 C.F.R. §§ 5.609, 5.611, 960.259(c).

52. CHA then calculates a household's monthly rent by subtracting the tenant's utility allowance from 30 percent of the household's adjusted monthly income. 24 C.F.R. § 960.253(c)(3). In this way, a household's rent and reasonable utility expenses do not exceed 30% of its adjusted income. 24 C.F.R. §§ 5.609.

53. Public housing authorities such as CHA must establish utility allowances for all check metered utilities furnished by CHA as well as allowances for all utilities purchased directly by residents from the utilities suppliers. 24 C.F.R. § 965.502(a).

54. Public housing authorities such as CHA must maintain a record that documents the basis on which allowances and scheduled surcharges, and revisions thereof, are established and revised. A public housing authority must make these records available for inspection by residents. 24 C.F.R. § 965.502(b).

55. To account for fluctuating utility rates, CHA is required to review its utility allowance at least annually and must additionally adjust its allowance any time there is a 10% change in the utility rate upon which the allowance was based. 24 C.F.R. § 965.507.

56. A public housing authority's lease must identify which utilities the tenant will pay and which utilities the housing authority will supply without additional cost to the tenant. 24 C.F.R § 966.4(iv). At some CHA developments, CHA pays for all utilities and tenants receive no utility allowance. At other developments, CHA pays for some or none of the utilities, and the tenant pays some or all of the utilities out of pocket.

57. CHA's public housing residential lease agreement states that "[t]he rent amount shall be determined by the CHA in compliance with United States Department of Housing and Urban Development (HUD) regulations and the CHA approved Rent Policy." CHA FY 2020 Residential Lease Agreement at p. 5, § 1, ¶ (b), attached as Exhibit A.

58. CHA's lease states that, if the resident pays for utilities or appliances, the CHA shall provide the resident with a utility allowance on a monthly basis and the resident bears the responsibility to maintain utilities connected in the unit by making payments directly to the utility provider. *Id.* at p. 4, ¶ 9. The lease goes on to state that "[t]he allowance shall be enough to pay for a reasonable use of utilities by an energy conservative household of modest circumstances consistent with the requirements of a safe, sanitary, and healthy living environment." *Id.*

59. CHA's lease prescribes that utility allowances are factored into the resident's rent calculation when the resident pays utilities directly to the utility company. *Id.* at 6, § 2, ¶ (c)(1)(a). When the rent calculation results in a negative amount after subtracting the utility allowance, the lease requires CHA to make utility reimbursement payments directly to the utility provider on the resident's behalf. *Id.* at 6, § 2, ¶ (c)(1)(b).

60. CHA's lease requires the CHA to return to the resident any rent that resulted from CHA's rent calculation error, providing the resident with an option to receive a check or account credit. *Id.* at 9, § 4, ¶ (g).

61. CHA's lease also requires it "[t]o comply with the requirements of applicable city building codes, housing codes, and HUD regulations materially affecting health and safety." *Id.* at 19, § 11, ¶ (b).

62. On information and belief, the CHA residential leases for FY2021 and FY2022 are materially the same with respect to the above cited provisions.

## CLASS ACTION ALLEGATIONS

63. Named Plaintiffs Tanisia Bowman, Gracie Moss, and Pauline Benton bring this action on behalf of themselves and all others similarly situated pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Rule 23(b)(3) class is defined as, "All current and former residents of CHA-owned public housing units who, since May of 2021, were or are entitled to utility allowance for natural gas or electricity." The proposed Rule 23(b)(2) class is defined as, "All current residents of CHA-owned public housing units who are entitled to a utility allowance for natural gas or electricity."

64. **Numerosity.** The classes are so numerous that joinder of all of their members is impracticable. Upon information and belief, the classes are comprised of more than 4,000 individuals. The putative class members are unlikely to press their claims on an individual basis because as residents of public housing, all putative class members have limited incomes, and the value of their individual claims is modest.

65. **Commonality and Predominance.** Common questions of fact and law predominate over questions affecting individual class members. Questions of law and fact common to classes include

    a) whether CHA failed to provide sufficient utility allowances as required by 42 U.S.C. § 1437(a), thereby requiring its tenants to pay more in rent than allowed by federal statute;

      b)     whether CHA made appropriate interim adjustments to tenants' utility allowances as required by 42 U.S.C. § 1437(a) and 24 C.F.R. § 963.507(b) to account for all rate changes of 10 percent or more between annual reviews; and

      c)     whether CHA breached its public housing lease with class members by not providing a utility allowance that was sufficient to pay for a reasonable use of utilities by an energy conservative household.

66.     **Typicality and Adequacy.** The Plaintiffs' claims are typical of the classes as a whole. All of the Plaintiffs' claims arise from the same unlawful practices: CHA's failure to update its utility allowances to account for rate changes of 10 percent or more between annual reviews in violation of the United States Housing Act, 42 U.S.C. § 1437(a), and its implementing regulations, and the CHA Residential Lease Agreement. The Plaintiffs do not present claims that are unique to themselves and instead bring claims typical to the class members. Proposed class representatives and class counsel will fairly and adequately protect the interests of the classes as a whole. Plaintiffs do not have any interests antagonistic to those of other class members. By filing this action, Plaintiffs have displayed an interest in vindicating their rights, as well as the claims of others who are similarly situated. Plaintiffs are represented by experienced counsel.

67.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it will:

    a.     avoid the heavy burden of multiple, duplicative suits;

    b.     avoid the virtually impossible task of getting all class members to intervene as party-plaintiffs in this action;

    c.     allow the Court, upon adjudication of defendant's liability, to determine the claims of all class members; and

    d.     allow the Court to enter appropriate final monetary relief with respect to the classes as a whole.

68. **Injunctive and Declaratory Relief**. CHA has acted or refused to act on grounds that apply generally to the Rule 23(b)(2) class as a whole, so that final injunctive or declaratory relief is appropriate respecting the class as a whole. More specifically, CHA has refused to make appropriate interim adjustments to tenants' utility allowances to account for all rate changes of 10 percent or more between annual reviews.

## LEGAL CLAIMS

### COUNT I – CHARGING RENT ABOVE THE STATUTORY CEILING – 42 U.S.C. § 1437(a) & 24 C.F.R. §§§ 960.253(c)(3), 965.501, & 5.603

69. Plaintiffs re-allege paragraphs 1 to 68 of this Complaint and incorporate them herein.

70. Defendant CHA is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

71. Defendants violated 42 U.S.C. § 1437(a) and its implementing regulations, by failing to provide its tenants with a sufficient utility allowance and thereby charging tenants in excess of federal statutory ceilings for rent.

### COUNT II - STATE LAW BREACH OF CONTRACT CLAIM FOR CHA'S BREACH OF ITS RESIDENTIAL LEASE

72. Plaintiffs re-allege paragraphs 1 to 68 of this Complaint and incorporate them herein.

73. Defendant CHA breached its duties under its respective leases with each of its tenant households in that since at least May of 2021, CHA failed to charge rent in an amount that is accordance with applicable federal implementing regulations for the United States Housing Act as required by its lease. CHA FY 2020 Residential Lease Agreement at p. 5, § 1, ¶ (b). Since at least May of 2021, Defendant CHA also breached its duty to establish a utility

13

allowance that shall be enough to pay for a reasonable use of utilities by an energy conservative household of modest circumstances consistent with the requirements of a safe, sanitary, and healthy living environment. *Id.* at p. 4, ¶ 9.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court:

    a.    Declare that the acts and omissions of the Defendant, as set forth above, violate the United States Housing Act of 1937, 42 U.S.C. § 1437(a) and its implementing regulations;

    b.    Declare that the acts and omissions of the Defendant, as set forth above, violate CHA's residential public housing lease;

    c.    Enter a preliminary and permanent injunction, without bond or upon a nominal bond, enjoining Defendant from terminating the assistance of any public housing tenant for the non-payment of utilities;

    d.    Enter a preliminary and permanent injunction directing Defendants to make retroactive adjustments of its utility allowances for all public housing tenants to reflect increases of 10 percent or more to natural gas and electricity rates;

    e.    Enter an order requiring CHA to specifically perform its obligations under its residential lease;

    f.    Award compensatory damages and prejudgment interest in an amount to be proven at trial;

    g.    Enter an order requiring Defendant to pay Plaintiffs' reasonable costs and attorneys' fees for the prosecution of this action;

    h.    Certify the Rule 23(b)(3) and Rule 23(b)(2) classes defined above and appoint the undersigned attorneys as Class Counsel; and

i. Grant Plaintiffs such further relief as this Court deems just and proper.

### Jury Demand

Plaintiff demands trial by jury on all issues as to which a jury trial is available.

DATED: May 26, 2022

By: /s/ Christopher J. Wilmes

Christopher J. Wilmes
Kate E. Schwartz
HUGHES, SOCOL, PIERS, RESNICK, &
DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
312-580-0100
*Attorneys for Plaintiffs*